IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ROBERT PRISOCK and REAGAN PRISOCK                                                  PLAINTIFFS

V.                                                          CIVIL ACTION NO. 1:19-CV-187-SA-DAS

TEMPUR-SEALY INTERNATIONAL, INC.,
TEMPUR-PEDIC NORTH AMERICA, LLC.,
JAM ENTERPRISES, INC., d/b/a ASHLEY
HOMESTORE                                                                          DEFENDANTS

ORDER

Robert and Reagan Prisock filed their Complaint [2] in the Winston County Circuit Court on September 13, 2019, alleging various state law claims against the Defendants. The Defendants removed the case to this Court on October 23, 2019 and assert that this Court has jurisdiction pursuant to 28 U.S.C. § 1332. Presently before the Court is the Plaintiffs' Motion to Remand [13] this case back to the Winston County Circuit Court. The issues are fully briefed and ripe for review.

*Factual and Procedural Background*

On or about August 16, 2016, the Plaintiffs purchased a Tempur-Up Adjustable Foundation bed frame and mattress from JAM Enterprises, Inc., doing business as, Ashley HomeStore ("JAM") in Columbus, Mississippi. This bed included an adjustable foundation that could be remotely controlled by the occupants of the bed. The Plaintiffs paid the Defendants to deliver and assemble the product in their home. The Plaintiffs claim that the JAM employees did not offer them any safety devices nor did they provide any warnings about safety hazards. At some point on May 7, 2018, the Plaintiffs' minor child was tragically killed when his head and neck became trapped and crushed underneath the movable portion of the adjustable foundation. The child was pronounced dead after he was transported to the emergency room—the cause of death being Mechanical Asphyxia due to Neck Impingement by Electric Adjustable Bed Frame.

The Plaintiffs, believing they were sold an unreasonably dangerous product without adequate warnings, filed suit against the Defendants, only two of which are diverse. Both Tempur-Sealy International, Inc., and Tempur-Pedic North America, LLC, are diverse defendants. JAM Enterprises, Inc., however, is a non-diverse Mississippi corporation. In an effort to revive federal jurisdiction, the Defendants argued in their Notice of Removal that JAM was improperly joined. Presently before the Court is the Plaintiffs' Motion to Remand [13] arguing that the case should be remanded back to state court because they have a viable claim against a non-diverse defendant. Thus, the Plaintiffs argue there is a lack of complete diversity for the purposes of this Court's original jurisdiction.

*Legal Standard*

The Judiciary Act of 1789 provides that "any civil action brought in a State court of which the districts of the United States have original jurisdiction, may be removed by the defendant, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Federal courts are courts of limited jurisdiction. *Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir. 1982). The Defendants removed this action to this Court basing their removal on diversity. Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and cost, and is between . . . citizens of different states." 28 U.S.C. § 1332(a); *Addo v. Globe Life and Accidents Ins. Co.*, 230 F.3d 759, 761 (5th Cir. 2000). After removal of a case, a plaintiff may move for remand, and "[i]f it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). The

Fifth Circuit has held that the removal statutes are to be construed "strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-9, 61 S. Ct. 868, 85 L. Ed. 1214 (1941).

*Discussion*

The sole issue before the Court is whether JAM was improperly joined to this suit. The Defendants argue that because JAM is a mere conduit not subject to liability, it is improperly joined. The Plaintiffs contend that JAM is not an innocent seller because it had actual or constructive knowledge of the dangerous condition of the product it sold to them.

"A claim of improper joinder by definition is directed toward the joinder of the in-state party, a simple but easily obscure concept. The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (citations omitted). "The doctrine of improper joinder rests on these statutory underpinnings, which entitle a defendant to remove to a federal forum unless an in-state defendant has been properly joined. Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id* at 573. The Fifth Circuit recognizes two ways to establish improper joinder: "(1) actual fraud in the pleadings of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id*. at 573 (*citing Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). The Defendants assert the latter. To that end, "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law." *Travis*, 326 F.3d at 647 (*citing Bobby Jones Garden Apartment, Inc. v. Suleski*,

3

391 F.2d 172, 176-77 (5th Cir. 1968)). Thus, the Court must look to the Plaintiffs' Complaint [2] to ascertain the viability of their claims against JAM.

The Plaintiffs sued JAM, and the other diverse defendants, under theories of Strict Liability, Strict Liability – Inadequate Warnings, Breach of Express and Implied Warranties, and Negligence. The Plaintiffs allege that JAM is liable, in particular, because it sold them an unreasonably dangerous product without providing adequate warnings about the product's dangerous propensity. In addition, they argue that JAM had several opportunities to communicate these warnings but never did. According to affidavits submitted by Robert and Reagan Prisock, the JAM sales associate demonstrated how to operate the adjustable bed at the store but did not show them any models that included safety features or child lock protections. *See* Affidavits of Robert and Reagan Prisock [21-1,2]. In addition, the affiants claim that not only did the sales associate fail to discuss any dangers associated with the adjustable base at the store, the JAM employees who installed the bed also failed to discuss any safety issues while assembling the product at the Plaintiffs' home. *Id*.

The Defendants contend that all of these claims fail as a matter of law because JAM is considered an innocent seller and thus not subject to liability. The Mississippi Legislature carved out protections for "innocent sellers" of products in Section 11-1-63(h) of the Mississippi Code. It provides:

> In any action alleging that a product is defective pursuant to paragraph (a) of this section, the seller or designer of a product other than the manufacturer shall not be liable unless the seller or designer exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; or the seller or designer altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; or the seller or designer had actual

4

>> or constructive knowledge of the defective condition of the product at the time he supplied the product.

Miss. Code Ann. § 11-1-63(h). The stated intent of the statute is "to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product." *Id*.[1] To support their argument that JAM was a mere conduit of the product, the Defendants provided the Declaration of George Keenan, the President of JAM Enterprises. Keenan declared that JAM did not design or manufacture the product, exercise substantial control over any aspect of the design, testing, manufacture, packaging, or labeling of the product, exercise substantial control over any aspect of the warnings and instructs provided with the product, alter or modify the product, or have actual or constructive knowledge of any allegedly defective condition of the product. *See* Declaration of George Keenan [16-1].

The Plaintiffs argue that the innocent seller provision is inapplicable here because JAM had "actual or constructive knowledge of the defective condition of the product at the time [it] supplied the product" to the Plaintiffs. Further, the Plaintiffs argue that the product was defective because it lacked adequate warnings or instructions at the time the product left the control of the seller. To establish actual knowledge, the plaintiff must do more than assert legal conclusions. *See Murray v. General Motors*, L.L.C., 478 Fed. Appx. 175, 180 (5th Cir. 2012). The Plaintiffs stated in conclusory fashion that "JAM had actual . . . knowledge that the adjustable foundation and mattress, without safety features or adequate warnings and instructions, posed an unreasonable hazard to children." But the Plaintiffs do not offer any facts to support this assertion. As the Fifth Circuit stated in *Murray*, vague and conclusory allegations must be supported by fact. *See id*.

---

[1] "Whatever the Legislature says in the text of the statute is considered the best evidence of the legislative intent." *Mississippi Dept. of Transp. v. Allred*, 928 So.2d 152, 155 (Miss. 2006) (*quoting Pegram v. Bailey*, 708 So.2d 1307, 1314 (Miss. 1997))

5

Absent additional facts, the Plaintiffs cannot show that JAM had actual knowledge of the alleged defect.

Although the Plaintiffs have not established that JAM had actual knowledge of the defect, their constructive knowledge argument deserves separate analysis. Black's Law Dictionary defines constructive knowledge as "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Black's Law Dictionary* 888 (8th ed. 2004). Similar to proving actual knowledge, merely pleading that the defendant(s) should have known is not sufficient. The Plaintiffs have not offered any evidence that JAM had constructive knowledge of the alleged defect. For example, there is no evidence that JAM was aware of a similar incident happening with this product prior to the Plaintiffs' purchase. Simply put, the Plaintiffs did not offer any evidence to suggest that JAM was anything more than a mere conduit of the product. Thus, the Court finds that the innocent seller affirmative defense is applicable and the Plaintiffs do not have a viable claim against JAM under the MPLA.

The Plaintiffs also claim that JAM breached their expressed and implied warranties that the product was safe and fit for household use by customers and users. The Defendants contend that this claim fails for two reasons: (1) this claim is based on the manufacturer's warranty, not the seller, and (2) the claim is barred by the innocent seller provision.

The Plaintiffs do not dispute the claim that the warranty was provided by the manufacturer. Also, there is no indication that JAM adopted and communicated these warranties to the Plaintiffs. Even viewing the facts in the light most favorable to the Plaintiffs, it would be unreasonable to allow a breach of the manufacturer's warranty on every item in a seller's store to likewise subject them to liability. There also appears to be an extended warranty purchased on the adjustable base, but the Plaintiffs did not argue a breach of that warranty in their motion.

In addition, since the innocent seller provision is a subpart of the MPLA, there have been questions about whether it protects sellers from claims deriving from other statutes. Several federal district courts have interpreted Section 11-1-63(h) as barring claims for breach of warranty against any seller that qualifies as an innocent seller. *See Willis v. Kia Motors Corp.*, 2007 WL 1860769, at *3 (N.D. Miss. June 26, 2007); *Jones v. General Motors Corp.*, 2007 WL 1610478, at *3 (S.D. Miss. June 1, 2007); *Collins v. Ford Motor Co.*, 2006WL 2788564, at *2–3 (S.D. Miss. Sept. 26, 2006); *Land v. Agco Corp.*, 2008 WL 4056224, *3 (N.D. Miss. Aug. 25, 2008); *Gardner v. Cooksey*, 2012 WL 968026, *4 (S.D. Miss. Mar. 21, 2012); *Willis v. Kia Motors Corp.*, 2007 WL 1860769 (N.D. Miss. June 26, 2007) (collecting cases). The Fifth Circuit has also endorsed this conclusion. Citing to the Mississippi Supreme Court's decision in *McKee v. Bowers*, the Fifth Circuit wrote that "although the Mississippi Supreme Court has held that the MPLA does not preclude a claim for breach of warranty, it is still subject to the innocent seller exemption in a products liability action." *Murray*, 478 Fed. Appx. at 179 (*citing Gardner v. Cooksey*, 2012 WL 968026, at *3-4 (S.D. Miss. Mar. 21, 2012)). The Court joins this line of cases. Thus, finding these opinions overwhelmingly persuasive, the Court finds that JAM's status as an innocent seller per Section 11-1-63(h), bars the Plaintiffs' breach of express and implied warranties claims.

The Plaintiffs also claim that JAM is liable for negligence. "Although negligence claims can be brought alongside strict liability claims, a party may not disguise a products liability claim as a negligence claim to avoid dismissal." *Murray v. General Motors, L.L.C.*, 478 Fed. Appx. 175, 181 (5th Cir. 2012); *citing McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 846 (S.D. Miss. Feb. 8, 2010). A products liability claim is disguised as a negligence claim when the plaintiff's common law negligence liability claim is a mere restatement of the claim brought under the MPLA. *See McSwain*, 689 F. Supp. 2d at 844; *see also McKee v. Bowers*, 64 So.3d 926, 940 (Miss.

2011) (noting that the "plaintiffs' negligence claim 'fail[s] to present any new discussion or claim that does not relate back to the . . . products liability claim which has previously been determined to be legally insufficient'") (quoting *Moss v. Batesville Casket Co.*, 935 So.2d 393, 406 (Miss. 2006)).

In their Complaint [2], Plaintiffs claim the Defendants are liable for negligence because they breached their duty of reasonable care in that the Defendants negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, warned, labeled, sold, delivered and/or assembled the adjustable foundation and mattress. This claim is nearly identical to their products liability claim which alleges that the adjustable foundation and mattress were unreasonably dangerous and defective and said defective conditions existed when the products left the control of the Defendants. In the Court's view, the Plaintiffs did not allege a separate claim of negligence but have instead restated their products liability claim using different terminology. Thus, the Plaintiffs' negligence claim is nothing more than a disguise of the products liability claim. Consequently, the Court's earlier determination that JAM is protected by the innocent seller provision also applies here.

*Conclusion*

For the reasons discussed above, the Plaintiffs' Motion to Remand [13] is DENIED and the stay is lifted. The Plaintiffs' claims against JAM Enterprises, Inc., d/b/a Ashley HomeStore are dismissed without prejudice.[2]

SO ORDERED this, the 12th day of May, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[2] Having found that the Defendants met their burden of establishing improper joinder, the correct procedure is to dismiss the claims against the non-diverse defendant as meritless. *See Smallwood,* 385 F.3d at 576 (finding "when a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits.").